(Decided 19th June, 1872.)

# GUSTAVUS KERSHNER AND WILLIAM KURFMAN *vs.* ANDREW J. KERSHNER's Lessee.

*Secondary Evidence—Res inter alios—Declarations of a Party as evidence against his pretensions—Rebutting evidence—Prayers and Instructions—Practice in the Court of Appeals—Presumption of Fact— Verdict in Ejectment.*

In an action of *ejectment*, the theory of the defence was that at March Term, 1820, of Washington County Court, two judgments were recovered against J, under whom the plaintiff claimed title to the lands in controversy; that writs of *fieri facias* had been issued thereon to lie, from term to term, until in 1827, the interest and estate of J in the lands in question were seized by the sheriff and sold. To support this defence, the defendants gave in evidence the docket entries and papers in the two suits against J and the judgments therein—one for $611.60 and costs, and the other for $315.69 and costs, with the entries of the *fieri facias* and continuances down to March Term, 1827, on which were entries in one case of "Made by sale of real estate," and in the other "Made $38.34—N. B. balance." These entries were proved to have been made by the clerk on the clerk's dockets. To the admission of this testimony the plaintiff excepted. It was further proved that

Kershner and Kurfman *vs.* Kershner's Lessee.

the original writs of *fieri facias* were lost and could not be found after diligent search. The defendants further proved that the sheriff advertised the interest of J in the lands mentioned in the declaration, or some of them, for sale at sheriff's sale; that several persons were present at the sale, and among them the plaintiff in the executions, to whom the lands were struck off, he being the highest bidder therefor; that J had often, after said sale, declared to several persons that his interest in said lands had been sold by the sheriff; that after said sale J was insolvent, and professed to own no property; that no letters of guardianship were ever taken out for his son the plaintiff; and that no letters of administration were granted upon the personal estate of J, &c., HELD:

1st. That the docket entries and papers in the suits against J, accompanied with the other facts offered in evidence by the defendants, were admissible for the purpose of raising the presumption that the writs of *fieri facias*, corresponding with the docket entries, did in fact exist, and were issued to the sheriff; that the same were levied on the interest of J in the lands, and that full and due return thereof was made by the sheriff. The primary evidence being lost, the secondary evidence was admissible for the purpose of raising the presumption that a valid seizure and sale had been made by the sheriff; and for the same reason the printed advertisement from a newspaper of the sheriff's sale, and the testimony of an appraiser as to the appraisement of the property, at the instance of the sheriff, were admissible in evidence.

2d. It having been shown by the proof that the purchaser at the sheriff's sale, had exercised no act of ownership over the property during the lifetime of J, evidence to show that the rents of the farm were, after the death of J, paid to such purchaser for ten or eleven years, until he conveyed by deed his interest in the land, and certain receipts by him for rent within that time, and his deed of conveyance, were inadmissible to affect the title or interest of J or of his heir-at-law, the plaintiff. Such evidence was inadmissible as *res inter alios.*

In an action of *ejectment* for an undivided moiety of certain lands, evidence having been offered by the defendants, tending to prove the seizure and sale by the sheriff of the interest in said lands of the party under whom the plaintiff claimed, to the party under whom the defendants claimed, the declarations of one of the defendants, made long after the sale, recognizing the title of the plaintiff, are admissible against such defendant, for the purpose of showing that in fact there had been no valid and effectual seizure and sale by the sheriff, or of explaining the real character and effect of the sale itself.

A witness for the plaintiff having testified as to certain conversations with a defendant, it was not competent, for the purpose of contradict-

ing such evidence, to ask the defendant who testified in his own behalf, to state *all* the conversations he had had with the witness. As rebutting evidence, the testimony of the defendant should have been confined to the particular conversations deposed to by the witness.

Where the prayers, granted by the Court cover the defendants' case, and give them the full benefit of their legal defence, the judgment will not be reversed, though some of their prayers which were rejected, may have been correct.

In an action of *ejectment* the defendants relied upon an outstanding title, derived under a seizure and sale by the sheriff of the interest in the land in question, of the party under whom the plaintiff claimed, and offered various facts and circumstances as presumptive evidence that such seizure and sale was valid. HELD:

That the presumption arising from the facts and circumstances given in evidence by the defendants, was not a presumption of law, conclusive upon the plaintiff and irrebuttable, but a presumption of fact to be found by the jury.

A plaintiff in ejectment declared for a term of fifteen years in the undivided moiety of certain lands, particularly described in the declaration. Issue was joined on the plea of not guilty. The whole question was the plaintiff's title to the land described in the *narr.* The jury found a "verdict for the plaintiff and assessed the damage at one cent." HELD:

That the plain meaning and import of the verdict was, that the defendants were guilty of the trespass and ejectment complained of in the declaration of the plaintiff, and the jury assessed the damage of the plaintiff by reason thereof, to be one cent. Such a verdict if set out in terms would be sufficient, and judgment would be entered thereon that the plaintiff recover his term, &c., in the undivided moiety of the tracts of land, &c., as in the *narr.*

APPEAL from the Circuit Court for Washington County.

The facts and exceptions as stated in the opinion of the Court, will, with the prayers presented by the parties respectively, suffice for an understanding of the questions decided.

The plaintiff offered the following prayers:

1. That if the jury find that in the year 1820, Andrew Kershner obtained two judgments against Jacob Kershner,

whom they shall also find to be the father of the plaintiff in this action, and that from the March Term of the Washington County Court, 1820, continually on from term to term until March Term of said Court, 1827, there are successive and regular entries of executions or writs of *fieri facias* on the said judgments on the respective dockets of said Court, some of which are stated in the said docket entries to be issued "to lie," and some where such entry does not appear, but that none of these several writs of *fieri facias* can be produced; and shall further find that at the March Term, 1827, of the Washington County Court, two writs of *fieri facias* did issue on the said judgments, and that the said writs were received by the then sheriff of Washington county, Alexander Neill, who advertised the lands to be sold at public sale, mentioned in the advertisement, read in evidence from the files of the "*Torchlight,*" a newspaper published in Washington county, and shall further find that the said lands or the estate of the said Jacob, mentioned in the said advertisement, were exposed at public sale in Hagerstown, on the day mentioned in the said advertisement, and that at such sale Andrew Kershner, the plaintiff in the said executions, was present and bid on the said property, and that the same was knocked down to him; but shall also find that the evidence of such sale, and of the bid of Andrew Kershner, and of the knocking down of the said property or estate to him, does not appear from any sheriff's return to the writs of *fieri facias*, or from any note or memorandum whatever in writing of such sale, bid and knocking down, nor from the sheriff's deed, or from the parol evidence of any witness or person who ever saw such note or memorandum in writing, or sheriff's return or deed, but from the parol evidence of Gustavus Kershner, the defendant; and shall further find that the said writs of *fieri facias* were returned to the said Court by the then sheriff, and that on the docket entries of the issual of the said writs are also the following: on the one, "made by sale of real estate," on the other, "N. B. balance;" and shall find that the said writs of

*fieri facias*, after diligent search by the proper officers, cannot be found, and are lost; and shall also find that the said Jacob Kershner, after the said sale testified to by Gustavus, the defendant, in frequent conversations with Rosanna Witmer, declared that his estates had been sold out by the sheriff to Andrew Kershner, or words to that effect, and also declared to Peter Eichelberger that the sheriff had sold him out, and that he was worth nothing, or words to that effect, but shall also further find that the said Jacob Kershner remained in continued and uninterrupted possession of the said estates, farming, using and enjoying them, from the year 1827, the time of the supposed sale, until February, 1838, when he died, and that after his death his widow and only child, (if the jury find a widow and only child survived him,) continued and remained in possession of the premises uninterruptedly and continually from the death of the said Jacob until sometime in the year 1854 or 1855, when they removed therefrom at the instance and persuasion of Gustavus, the defendant, and that after the death of the said Jacob the said Gustavus rented the premises, on which the said Jacob had resided, to tenants, and received the rents therefor, and that during all this time Andrew Kershner, the plaintiff in the executions aforesaid, was alive, living about three miles from the place of residence of the said Jacob, during which time he did not enter into possession of the said lands or estates, or any part thereof, nor demand or receive from the said Jacob any rents, issues or profits of the said estates during his lifetime, and that he did not, after his death, enter into possession of any part of the said estates or lands, then the defendant has failed to show a legal and subsisting outstanding title in Andrew Kershner, the plaintiff in the said executions; and if the jury further find that the plaintiff is the only child and heir-at-law of the said Jacob, and is above the age of twenty-one years, and that the said Jacob was in the continual and uninterrupted possession of the lands and estates sued for in this action, as co-tenant with the defendant, Gustavus, from the

year 1815 until February, 1838, when he died, then the plaintiff is entitled to recover.

2. That a sheriff's sale of real estate, under the provisions of the Statute of Frauds, must be evidenced by a memorandum thereof, in writing, or the sheriff's return to the execution under which the land was sold, describing the same with sufficient precision to identify it, or the sheriff's deed, particularly describing and conveying the same to the purchaser; and that unless the jury find that the sale of the lands in controversy, alleged to have been made by the sheriff to Andrew ·Kershner, deceased, are thus evidenced, there is no legal and competent evidence of said sale before them, and they must find for the plaintiff.

3. If the jury find the facts set out in the plaintiff's first prayer, which are hereby referred to and made part of this, and further find that Jacob Kershner, the father of the plaintiff, was in possession of the said lands after the alleged sale in the same manner that he was prior thereto, and that he so continued from that time, to wit, from 1827 down to the month of February, 1838, when he died intestate in the same possession; and shall also find that his widow and infant son, the plaintiff in this case, remained on the said farm after the death of said Jacob, down to the year 1854 or 1855, occupying the mansion-house, and drawing their support from the said farm, and that they relinquished their possession thereof at the instance of the defendant in this cause, and that Andrew Kershner, the alleged purchaser at the supposed sheriff's sale, did not enter into possession of the said lands or any part of them, and shall further find that the defendant, Gustavus Kershner, repeatedly, from the year 1838 down to the year 1854 or 1855, admitted that Jacob Kershner, the father of the plaintiff in this cause, was co-owner of the said lands with him, and also admitted, after the death of said Jacob, that the plaintiff in this action was entitled to the one undivided half of the lands held by him and his brother Jacob, as co-tenants or owners, in the lifetime of the said Jacob, then the defend-

ant has failed to show an outstanding title in Andrew Kershner, deceased, and the plaintiff is entitled to recover.

4. If the jury find the facts set out in the first prayer of the plaintiff, and also those set out in the third prayer, then there is evidence from which the jury may find against the presumption, that there was a valid and effectual seizure and sale of the lands in controversy in this case, by the sheriff to Andrew Kershner, and if the jury so find, the plaintiff is entitled to recover.

5. If the jury find the facts stated in the first and third prayers of the plaintiff, and further find that the clerks of the Washington County Court did keep a record-book in which was recorded all the proceedings of the said Court upon judgments rendered, and upon which executions issued, by virtue of which lands were sold by the sheriff, and that the said record-books purport to contain the record of proceedings of such judgments and sales made from the year 1819 on to 1829, covering the time and year in which the supposed sale of the lands in controversy was made to Andrew Kershner, but that examinations and searches have been made in the said book for the record of the judgments and proceedings of the sheriff in the two judgments shown in evidence by the defendant, and that no such record of judgments, *fieri facias* and return of the sheriff can be found therein, then the want of such record of proceedings in respect to the two judgments of Andrew Kershner against Jacob Kershner, together with the other facts set out in the said prayer, are sufficient to rebut the presumption of sale to Andrew Kershner, as contended for by the defendants, and the jury ought not to presume a sale.

The defendants prayed the Court to instruct the jury as follows:

1. That in a sale of real estate by a sheriff under an execution, the title of the property levied on and sold passes by the sale and by operation of law to the purchaser, and that a deed from the sheriff to the purchaser is not necessary to pass the title.

2. That if the jury shall believe from the evidence in this cause that there are docket entries upon the judicial dockets of the clerk of Washington County Court, at March Term, 1827, of said Court, corresponding with the judgments obtained by Andrew Kershner against Jacob Kershner, the father of the plaintiff, Andrew J. Kershner, at March Term, 1820, of said Court, given in evidence by the defendants, and that there are short returns on said docket entries, in the handwriting of one of the deputy clerks in the office of the clerk of said Court at the time, to the effect that one of said executions had been made by a sale of real estate, and on the other that $38.34 had been made, and *nulla bona* for the balance; and shall further believe that said docket entries imported the existence and due return of said writs, and that there were similar docket entries, corresponding with said judgments, to every term of said Court from March Term, 1821, to November Term, 1826, both inclusive; and shall also believe that Alexander Neill was sheriff of said Washington county at said March Term, 1827, and that he advertised all the right, interest and estate of Jacob Kershner, in the land and premises declared for in this suit to be sold by virtue of two executions issued out of said Court and to him directed, on two judgments of said Court, against Jacob Kershner, at the suit of Andrew Kershner, and another at the suit of Samuel Shatt, use of David Cushwa, against said Jacob, on the 14th day of April, 1827, and that the said Neill, as sheriff, did sell all said Jacob's interest in and to said land and premises named in said advertisement, at the time and place therein named, and that said Andrew attended said sale and bid on said interest, and that said interest in said land and premises was knocked down to said Andrew as the highest bidder therefor; and shall further believe that said Jacob Kershner afterwards declared that he had been sold out at sheriff's sale, and that the said Andrew Kershner had bought his property at sheriff's sale; and shall also believe that writs of *fieri facias* answering to said entries on said judicial docket

at March Term, 1827, with any papers that may have belonged to them, have been diligently searched for among the papers of the office of said clerk of said Court, by the proper persons in charge of the same, and also among the papers of said Alexander Neill, and that the same cannot and have not been found, and that the said Alexander Neill and also the clerk of said Court and his deputies in the office at the time said docket entries were made, are dead; that the said Jacob declared to different persons that he had been sold out at Sheriff's sale, and that he had nothing; that he was greatly embarrassed and unable to pay his debts; that the said Jacob did die indebted to various persons by judgments and otherwise, and that he had no property at the time of his death; that there was no administration on his estate, and no guardianship for his son, Andrew J. Kershner, the plaintiff in this cause, then the said facts and circumstances, if the jury find them, are evidence upon which the jury may ground the presumption that writs of *fieri facias*, corresponding with said entries on said judicial docket at March Term, 1827, of said Court, did issue on said judgments of said Andrew Kershner, against the goods and chattels, lands and tenements of said Jacob Kershner, and were delivered to and placed in the hands of said Alexander Neill, as sheriff of said county, to be executed, and that they were levied on the interest of said Jacob in and to said lands, and that he sold the same to said Andrew Kershner at said sheriff's sale, and that said Neill, as sheriff, made due return of said writs of *fieri facias* accordingly; and that if the jury shall so believe and presume, then the title of the said Jacob in and to said interest in the said lands passed out of the said Jacob by said sale, and the plaintiff cannot recover in this action, and the verdict should be for the defendants.

3. That if the jury believe the facts set out in the defendants' second prayer, and shall also believe that the said Andrew Kershner exercised acts of ownership over the interest of said Jacob, in and to said land, after said Jacob's

death, by receiving rents and profits therefrom, and that in the year 1849, he conveyed the same to Gustavus Kershner and William Ditto, by the deed of the 2d of April, of that year, given in evidence, with the answer of said Gustavus in chancery also given in evidence, then the said jury are not only at liberty to presume the existence of and due returns to the writs of *fieri facias* of March Term, 1827, as stated in the foregoing second prayer, but the contract of sale by the sheriff became executed in said Andrew Kershner, and the title to said lands of the said Jacob vested in him by force of said facts, without regard to the requirements of the Statute of Frauds, and the plaintiff would not be entitled to recover, but the verdict must be for the defendants.

4. That if the jury believe the facts set out in the second prayer, or in the second and third prayers, then Jacob Kershner and his son, the plaintiff claiming under him, are estopped and precluded from questioning the sale by the sheriff to said Andrew, and the plaintiff would not be entitled to recover in this action.

5. That the omission of the clerk of Washington County Court to record the judgments-of *Andrew Kershner vs. Jacob Kershner*, given in evidence in this cause, with all proceedings thereunder, as required of him by the Act of 1817, ch. 119, section 7, if the jury find such proceedings and omission, does not affect, or impair, or invalidate the title acquired by the purchase at said sheriff's sale, if the jury find such sale to have been made, but the said title remains as valid and effectual as if said judgments and proceedings thereunder had been duly recorded agreeably to the requirements of said Act of Assembly.

6. That if the jury believe the facts set out in the second prayer, or in the second and third prayers, then said facts amount to or create a presumption of law, that said sale by the sheriff did take place, and was duly returned by him, and that in such case the jury are bound to find for the defendants.

The Court, (PERRY and MOTTER, J.) granted the fourth prayer of the plaintiff and rejected the others; and granted the second and fourth prayers of the defendants and rejected the others. To the granting of the plaintiff's fourth prayer and to the refusal by the Court to grant the first, third, fifth, and sixth prayers of the defendants, they excepted. The jury rendered a verdict for the plaintiff and assessed the damage at one cent. Judgment on verdict. The defendants appealed. William Kurfman was made a party defendant because of his purchase of a portion of the lands from Gustavus Kershner and William Ditto.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON and MILLER, J.

*Daniel Weisel,* for the appellants.

All the evidence offered or given on the trial below by the defendants, was not in the character *of original,* or the proper legal evidence to show that the title was not in the plaintiff; for the defence was, that the lands which he claimed were sold by the sheriff under two writs of *fieri facias* upon two judgments against his father, Jacob Kershner, and in the lifetime of the father, and that the proper legal evidence of this were the said writs of *fieri facias,* the seizure and levy thereunder, the sale after due notice, and the return of the writs by the sheriff, signed by him, containing a proper description, &c., of the land or interest sold. This would have been sufficient, and the Statute of Frauds gratified, without a deed from the sheriff to the purchaser. Had these writs, thus returned, been produced, the defendants would have rested their case upon them.

It was because these could not be found, after diligent search, by the officers, it was competent for the defendants to resort to secondary evidence to supply them, or rather to prove that they had in fact existed, and to prove their con-

tents—evidence upon which the jury could found a legal presumption of their existence and contents.

· The Court below, in this investigation, properly allowed the proof of the docket entries of the judgments of Andrew Kershner or Jacob Kershner, the entries from the judicial dockets thereon, the entries of a sheriff's return on the clerk's docket, the printed advertisement of sale, and evidence of the sale itself, and other matters all bearing upon this inquiry. The defendants, still pursuing this inquiry, offered to prove acts of ownership over the lands by the purchaser, Andrew Kershner, at said sheriff's sale, such as he claimed and received the rents and profits of the same, that he passed receipts for rents, signed by him, and produced at the trial, and that he afterwards actually conveyed the same by deed; which deed was offered from the records. The refusal to admit this proof of acts of ownership, exercised by the purchaser of the land, forms the defendants' first, second and third exceptions. The Court said it would not be done "unless the defendants could also prove that the purchaser also exercised acts of ownership over the land during the lifetime of said Jacob."

Acts of ownership, if they do not in themselves prove title, consist with title, and the acts of Andrew Kershner, who was proved to have purchased at the sheriff's sale, would be admissible as secondary evidence in a case like this, whenever exercised, after the death of Jacob, as well as before, particularly when taken in connection with Jacob's repeated declarations that he had been sold out at sheriff's sale, and Andrew Kershner was the purchaser, as proved. These declarations are binding upon his heirs. *Funk vs. Newcomer, et al.,* 10 *Md.,* 317; 1 *Greenl. Ev.,* secs. 109, 189, *note* 1.

The plaintiff, to rebut the evidence thus offered by the defendants, proposed to prove by King, Spickler and Mrs. Susan Kershner, certain conversations with Gustavus Kershner immediately after Jacob's death, and at certain times afterwards, to the effect that Jacob was worth as much as

himself, and that the plaintiff would receive it, &c. The Court allowed these to be given, and the defendants' fourth and fifth exceptions were on this ground.

This evidence should not have been allowed, because it was not properly, or in any sense, rebutting testimony. It did not rebut the evidence of the docket entries, advertisement of sale, or any other particulars of the defendants' proof. And if it be said that it rebuts the proof of Gustavus as to the sale by the sheriff, it could not have that effect. The witnesses detailing these conversations were not at the sale. The factum of sale, or Gustavus' knowledge, if contradicted, cannot be contradicted by any declarations of his afterwards, unless those declarations respected the sale itself and gave a different account of it than he did upon the stand. So far they would be admissible to contradict him; but otherwise his declarations are no proof in derogation of Andrew Kershner's title as purchaser at sheriff's sale. His mere presence at the sale, and testifying to it, does not justify the introduction of conversations afterwards, even if true, that would be at variance with the purchaser's title. That title did not rest upon his opinions or constructions at that time. He afterwards was satisfied of that title, and took under it. If he had been absent from the sale, his declarations to others would have been clearly inadmissible as rebutting testimony. His presence at it makes no difference, unless it is the evidence of one also present, and offered to contradict his proof in relation to the sale itself.

There was error in granting the plaintiff's fourth prayer. This prayer is based on the facts set out in his first and third prayers, if found to be true. This goes upon the ground that it was not competent for the defendants to rely upon presumptive evidence of the existence of the writs of *fi. fa.* and their contents, and proper returns of the same, &c. The prayer also refers to the declarations of Gustavus Kershner.

As to evidence of presumption, and the effect of judicial sales, reference may be had to the following authorities:

*Elliott vs. Knott,* 14 *Md.,* 121, 134, 135; *Miles vs. Knott,* 12 G. & J., 442 to 445; *Tomlinson's Lessee vs. Devore,* 1 *Gill,* 349; *Marshall's Lessee vs. Greenfield,* 8 *G. & J.,* 349; *Hanson vs. Barnes' Lessee,* 3 *G. & J.,* 368.

In case of loss the next best evidence is to be furnished. *Boothe vs. Dorsey,* 11 *G. & J.,* 247; *Smith vs. Wilson,* 17 *Md.,* 469; *Weatherhead's Lessee vs. Baskerville,* 11 *Howard,* 360; 1 *Greenleaf on Ev.,* secs. 509 and 520; *Buller's N. P.,* 228; *Boteler & Belt vs. State, &c.,* 8 *G. & J.,* 381; *Best on Presump.,* secs. 68 and 71, (47 *L. L.;*) *Clark vs. Belmear,* 1 *G. & J.,* 449; *Estep and Hall's Lessee vs. Weems,* 6 *G. & J.,* 308; *Balt. Chem. Co's Lessee vs. Dobbin,* 23 *Md.,* 219.

The first prayer of the appellants it is admitted, was properly rejected—an important ingredient having been omitted, though the point of the prayer was that a sheriff's deed was unnecessary.

The third prayer of the appellants ought to have been granted. *Crane vs. Gough,* 4 *Md.,* 316; *Brown on Statute of Frauds,* secs. 115, 116.

The provisions of the Act of 1817, ch. 119, sec. 7, are only directory to the clerk, and his omission to record the judgments would not impair a purchaser's right under executions on the same, if properly made. Therefore, the rejection of the appellants' fifth prayer was erroneous. *Boteler and Belt vs. State, &c.,* 8 *G. & J.,* 381; *State vs. Wayman,* 2 *G. & J.,* 255; *Mackall vs. Farmers' Bk.,* 12 *G. & J.,* 176; *P. W. & B. R. R. vs. Howard,* 13 *How.,* 231; *Mayer's Dig.,* 355.

The Court committed no error in granting the appellants' second and fourth prayers. They put to the jury their right to found a presumption of sale by the sheriff, upon the various facts put in proof, if believed by them.

The verdict was too general and insufficient in this case for a judgment to be rendered thereon. *Dorsey on Ejectment,* 73, note; 2 *Evans' Harris,* 341, for Form of Verdict; *Hughes vs. Howard,* 3 *H. & J.,* 9; *Miles vs. Knott,* 12 *G. & J.,* 402; *N. C. R. R. Co. vs. Canton Co.,* 24 *Md.,* 492.

*George Schley, W. T. Hamilton* and *Attorney General Syester*, for the appellee.

All the evidence in the case is set out in the plaintiff's first and third prayers, and by his fourth prayer the jury was instructed that there was evidence from which they might find against the presumption that there was a valid and effectual seizure and sale of the lands in controversy. The defendants sought to shew an outstanding title in Andrew Kershner, by the production of the judgments, writs of *fieri facias*, advertisement of sale, and docket entries of "Made by sale of land," &c., by the admissions of Jacob Kershner, subsequent to said alleged sheriff's sale, of his interest in said lands—by his indebtedness to divers persons—and by certain unsatisfied judgments, and that Andrew Kershner was the purchaser and owner of Jacob's interest in said lands.

To accomplish this, the jury must presume that there had been a valid seizure and sale of his interest in said lands, by the sheriff, from the evidence thus presented. Conceding, for the argument, that the defendants' evidence, standing alone, would have been sufficient for such presumption, yet said presumption was capable of being rebutted and set aside by evidence. The plaintiff attempted to do this, by showing that such presumption could not be made by the jury in the light of the following facts in evidence in the cause, viz:

*First.* That Jacob Kershner, after said supposed sale, remained in continued and uninterrupted possession, farming, using and enjoying the lands from the year 1827, the time of said supposed sale, until February, 1838, when he died.

*Second.* That, after his death, his widow and only child (the plaintiff) remained in possession of the farm on the Conococheague from February 1838, until some time in the year 1854 or 1855, deriving their support from said land, and then removed therefrom at the instance and persuasion of Gustavus.

*Third.* That after their removal from said farm, Gustavus, and not he and Andrew Kershner, his alleged co-owner, rented said farm to tenants and received the rents, &c.

*Fourth.* That Andrew Kershner, the supposed purchaser, was alive and resided only three miles distant from said farm, upon a smooth turnpike road, and that he never did enter into or claim possession of the said lands, nor demand nor receive from said Jacob any rents, &c., of said lands, during Jacob's lifetime, and did not, after his death, enter into possession of any part of said lands.

*Fifth.* That Jacob was in possession of said lands from the time of said supposed sale in 1827 to 1838, in the same manner that he was prior thereto, farming the same as before, and appropriating to his own use their proceeds.

*Sixth.* That Gustavus, repeatedly, from 1838 to 1854, 1855, admitted that Jacob was co-owner of said lands, and also admitted, after the death of said Jacob, that the plaintiff was co-owner with him of the lands held by him and his brother Jacob in his lifetime.

If the jury found the above facts, they repelled the claim of ownership set up in Andrew Kershner, because the acts and conduct of both Jacob and Andrew were at war with Andrew's alleged title, and could only be explained upon the hypothesis that no such sale and transfer of title, as was alleged, had ever occurred, or if they did occur, the whole transaction was a sham one. The presumption which the defendants asked the jury to make, was *rebuttable*, and the Court properly instructed the jury, that if they found certain facts, they were warranted in finding against the presumption of a valid seizure and sale of the lands to Andrew Kershner. *Best on Presumptions, sec.* 25.

The second prayer of the defendants, which was granted, taken in connection with the facts detailed in the third, and the fourth prayer which was also granted, gave to the defendants the benefit of every fact in the case, and every proposition or inference of law or fact which he could ask.

If the jury believed the facts detailed in the second prayer, they were instructed that the title of Jacob in and to his interest in said lands, passed out of him by said sale, and the plaintiff could not recover; and they were further instructed by the fourth, "that if they believed the facts set out in the second, or second and third prayers, then Jacob Kershner and his son (the plaintiff) were estopped and precluded from questioning the sale by the sheriff to said Andrew, and the plaintiff would not be entitled to recover." Surely the defendants, after being gratified with such instructions, could not complain.

The defendants complain that their third prayer was rejected.

Upon this prayer it should be remarked, that no deed from Andrew Kershner to Gustavus Kershner and William Ditto was in evidence in the cause, as stated in the prayer, and its first petition had been satisfied by the prayers already granted. But upon what principle the Court was called on to declare that the contract of the sale of the sheriff, without regard to the requirements of the Statute of Frauds, was executed in said Andrew, is not perceived.

All sheriffs' sales are within the Statute of Frauds, and must be evidenced in one of three modes; and the defendants' second prayer recognizes this necessity, and seeks to establish the alleged sale, by asking the jury to presume that a return of said writs of *fieri facias* was made by the sheriff; which return would gratify the Statute. But in this prayer they seek to ignore such requirement, and complain that the Court would not do so. This prayer was properly rejected, because it did not correctly announce the law; and also because it submitted to the jury to find a fact, viz., the deed from Andrew Kershner to Gustavus Kershner and William Ditto, in support of which there was no testimony. *Walter, et al. vs. Alexander and Wife,* 2 *Gill,* 204; *Pierce & Rowles vs. Negro John,* 6 *Md.,* 28; *Preston & Hepburn vs. Leighton, use of Kelly, Ball & Co.,* 6 *Md.,* 88; *Plank Road Co. vs. Hoffman,* 9 *Md.,* 559; *Keech*

*vs. Balt. & Wash. R. R. Co.,* 17 *Md.,* 32 ; *Hagan vs. Hendry,* 18 *Md.,* 177 ; *Birney vs. N. Y. & Wash. Tel. Co.,* 18 *Md.,* 341 ; *Mayor and C. C. of Balt. vs. Poultney & Trimble,* 25 *Md.,* 34 ; *Hamilton vs. State, use of Hardesty,* 32 *Md.,* 348.

And also because it was in conflict and inconsistent with their prayers already granted.

The defendants' fifth prayer was rejected, and the Court, in refusing to grant the plaintiff's fifth prayer, granted substantially this prayer.

Whilst it may be conceded that the omission to record the judgments, &c., would not have invalidated the purchaser's title, the refusal of this prayer, if erroneous, would be no ground for reversal, as the prayers of the defendants, granted by the Court, correctly announced all the law the exigences of their case required.

Where several instructions are asked, and some are granted and others rejected, if those granted cover the whole ground, the judgment will not be reversed, though some of those rejected were proper to be granted. *Mutual Safety Ins. Co. vs. Cohen,* 3 *Gill,* 459 ; *N. Y. Life Ins. Co. vs. Flack,* 3 *Md.,* 341 ; *Davis vs. Furlow's Lessee,* 27 *Md.,* 546 ; *B. & O. R. R. Co. vs. Resley,* 14 *Md.,* 424 ; *Pettigrew vs. Barnum,* 11 *Md.,* 434 ; *Keech vs. B. & O. R. R. Co.,* 17 *Md.,* 32.

The jury were not trying whether Andrew Kershner's title had been affected, impaired or invalidated, but whether he had title or not. According to the prayers granted, they could find he had title, and if they did so find, it was declared the plaintiff was not entitled to recover, and he was estopped from controverting the sheriff's sale. As title or not was the question to be decided, this prayer was calculated to impress the jury that they were, first, to find whether he had title, and next, its quality. Such an inquiry was not in the province of the jury, but in that of the Court.

The defendants' sixth prayer was properly rejected, because,

*First.* The Court, by granting the defendants' second prayer had told the jury that if they found the facts therein detailed

they were evidence upon which they might ground the presumption that writs of *fieri facias* did issue, did go into the hands of the sheriff, who levied the same on the lands of Jacob, and sold the same to Andrew Kershner at sheriff's sale, and that the sheriff made due returns of said writs, and that if the jury did so believe and find, then the title passed out of Jacob, and the plaintiff could not recover.

*Second.* In granting the defendants' fourth prayer, the jury were instructed that if they believed the facts set out in the second, or second and third prayers, then Jacob Kershner and his son were estopped and precluded from questioning the sale by the sheriff to Andrew, and the plaintiff would not be entitled to recover.

*Third.* The Court, in granting the plaintiff's fourth prayer, had told the jury that if they believed certain facts therein set forth, then there was evidence from which they might find against the presumption of a valid and effectual seizure and sale of the lands in controversy, by the sheriff to Andrew Kershner, and if they so found, the plaintiff was entitled to recover.

All these prayers were framed upon the theory that the presumption sought to be drawn from certain facts might or might not be made by the jury; in other words, that the presumption the jury was invoked to make, was *rebuttable.* The defendants, by this sixth prayer, asked the Court to instruct the jury that the facts as set out by them in their second, or second and third prayers, created a *presumption in law* that said sale was made by the sheriff and duly returned by him, and that in such case the jury was *bound* to find for the defendants. This prayer asserted the presumption to be *irrebuttable.* Thus it will be seen that the hypothesis of his sixth prayer was in direct conflict with the second and fourth, which had been granted.

Was the presumption to be made, a presumption of law? *Best on Presumptions,* 17–20; 1 *Greenleaf on Evidence, secs.* 14, 15.

On the whole, modern Courts of Justice are slow to recognize presumptions as irrebuttable, and are disposed to restrict rather than to extend their number. *Best on Presump.*, 22.

Where prayers granted on the same hypothesis of facts are so inconsistent, that conformity with one necessarily implies disregard of the other, they are calculated to mislead, and therefore erroneous. *Cumb. Coal and Iron Co. vs. Tilghman*, 13 *Md.*, 74; *Young vs. Mertens*, 27 *Md.*, 114; *Balt. and O. R. R. Co. vs. Blocher*, 27 *Md.*, 277, 286.

Where the presumption asked by a prayer to be drawn is only one of fact, and not of law, imperatively binding upon the jury, an instruction that if the jury believed the facts stated in it, "then the jury may and *ought* to find for the defendant," is erroneous, because the term "*ought*" makes it imperative upon the jury so to find. *Peterson's Ex'rs vs. Ellicott*, 9 *Md.*, 52; *Wilson, Adm'r of Owens, vs. Smith*, 10 *Md.*, 67.

A general verdict for the plaintiff is good, although it includes part of the defendants' land. *Reeder's Lessee vs. Smith*, 1 *H. & McH.*, 158.

If the plaintiff has laid his pretensions only in one way, the general verdict will be sufficient. *Dorsey on Ejectment*, 73, *note* 5; *Gittings' Lessee vs. Hall*, 1 *H. & J.*, 28.

If, in ejectment, the jury "find for the plaintiff one cent damages," the clerk, in the order, may extend the verdict as if it were: "We, of the jury, find for the plaintiff the lands in the declaration mentioned, and one cent damages." *M'Murry vs. O'Neill*, 1 *Call's Rep.*, 246.

The plaintiff declared for a term of fifteen years in the undivided moiety of the lands mentioned in the declaration; from which said lands, he alleged, the defendant had ousted him. The issue before the jury was whether or not the plaintiff had title to said lands. This issue the jury found for the plaintiff, and thereupon assessed his damages at one cent. This verdict could mean but one thing, viz: that the plaintiff do recover his term and nominal damages, and is as

certain as if it had been delivered in such words by the jury itself, or in the form in 2 *Harris' Entries*, 205.

The verdict is a general one, and the error in it, if there be error, is a clerical error, which will be corrected by this Court. *Kent's Adm'rs vs. Lyles*, 7 *G. & J.*, 73; *Robey vs. Turner*, 8 *G. & J.*, 126; *Smith, Ex'r of Smith, vs. Morgan*, 8 *Gill*, 140; *Mitchell vs. Smith*, 4 *Md.*, 403.

BARTOL, C. J., delivered the opinion of the Court.

In April, 1860, Andrew J. Kershner, the appellee's lessor, filed his bill on the equity side of the Circuit Court for Washington county, against the appellants, claiming to be the owner in fee of the undivided moiety of certain lands therein described, then in the possession of the appellants, praying for a partition of the same and an account of rents and profits. After answer and proof the Circuit Court, upon the hearing, declined to decree until after the title to the land put in issue had been determined at law.

Whereupon this action of *ejectment* was instituted by the appellee, who declared for an undivided moiety of the lands in controversy.

It appears from the proof that Jacob Kershner, Sr., on the 5th day of March, 1810, executed his last will, in due form to pass real estate; which was admitted to probate in the year 1815, in which year the testator died. By the provisions of the will all the real estate of the testator situated in Maryland, was devised to his two sons, *Jacob* and *Gustavus*, subject to their mother's dower, and to the payment of certain legacies to his four daughters. After the death of Jacob Kershner, Sr., the devisees, Jacob and Augustus, entered into possession of the lands, which continued in their joint occupancy till the year 1838, when Jacob died intestate, leaving his only child and heir-at-law *Andrew J. Kershner*, the plaintiff's lessor, then an infant about one month old, and a widow named Susan. The widow and infant son remained on the farm, whereon Jacob died, after his death,

deriving their support therefrom for about sixteen years, or until the year 1854; when at the instance of Gustavus, they removed to the village of Clearspring, in Washington county. In the year 1859, Andrew J. Kershner arrived at age, and shortly thereafter demanded of his uncle Gustavus his share of the lands so devised and descended, and of the rents and profits. His claim not being admitted, he filed his bill in equity as before stated; and afterwards instituted this action. The theory of the defence was that at March Term, 1820, of Washington County Court, two judgments had been recovered against Jacob Kershner, Jr., at the suit of Andrew Kershner, that writs of *fieri facias* had been issued thereon to lie, from term to term, until in 1827 the interest and estate of Jacob Kershner, the defendant in the executions, in all the lands devised to him by the will of his father, were seized by the sheriff and sold to Andrew Kershner, the plaintiff in the judgments. To support this defence, the defendants below gave in evidence the docket entries and papers in Nos. 162 and 163 trials, March Term, 1820, being two suits of *Andrew Kershner against Jacob Kershner*, and judgments therein, one for $611.60 and costs, and the other for $315.69 and costs; with the entries of *fieri facias* and continuances, down to March Term, 1827, on which are entries, in one case of "*Made by sale of real estate*," and in the other "*Made* $38.34, *N. B. balance*." These entries were proved to have been made by the clerk on the clerk's dockets. Exception was taken by the plaintiff below to the admission of this testimony, but it being proved that the original writs of *fieri facias* were lost, and could not be found after diligent search, the testimony accompanied by the other facts offered in evidence by the defendants below, was no doubt admissible for the purpose of raising the presumption that the writs of *fieri facias* corresponding with the docket entries did in fact exist, and were issued to A. Neill, sheriff; that the same were levied on Jacob's interest in the lands, and that full and due return thereof was made by the sheriff.

We are therefore of opinion there was no error in the rulings of the Circuit Court set out in the plaintiff's first, second and third bills of exceptions. The primary evidence being lost, it is very clear that the secondary evidence was admissible for the purpose of raising the presumption that a valid seizure and sale had been made by the sheriff. For the same reason the sheriff's advertisement of sale mentioned in the plaintiff's fourth exception, was properly admitted in evidence; and also the testimony of George Ankeny as to the appraisement of the property at the instance of the sheriff, as stated in the plaintiff's fifth exception.

We come now to the appellants' *first, second* and *third* bills of exceptions.

These were taken to the action of the Circuit Court in excluding certain evidence offered by the defendants below, and as they all depend upon the same legal principle, they may be considered together. The defendants offered to prove by Gustavus Kershner, that the rents of the farm on which Jacob had lived and died, were after his death, paid to Andrew Kershner for ten or eleven years, until Andrew had conveyed by deed his interest in the land. They offered in evidence the deed of the 2d of April, 1849, from Andrew Kershner to William Ditto and Gustavus Kershner conveying the lands in question. And they also offered in evidence certain receipts of Andrew Kershner for rent, dated in 1839 1840 and 1844. The object of this testimony was to prove that Andrew Kershner exercised acts of ownership over the farm; but the Circuit Court excluded the evidence, "unless the defendants could also prove that Andrew exercised acts of ownership over the land during the life time of Jacob." It seems to us that this evidence was properly excluded as *res inter alios.* It had been shown by the proof that Andrew had claimed or exercised no acts of ownership over the property during Jacob's life time; such transactions between him and other parties, after Jacob's death, could in no manner affect the title of Jacob, or of his infant heir.

The *fourth* and *fifth* bills of exceptions taken by the appellants, raise the question of the admissibility of the declarations made by the defendant Gustavus Kershner, deposed to by the witnesses George King and David Spickler, as follows—by the former that he lived on the farm from 1840 to 1848, and that during that period Gustavus frequently stated "*that the property was undivided and that when Andrew* (the plaintiff) *came of age, he would be entitled to his father's portion,*" and by the latter, similar declarations made by Gustavus the day after Jacob's death, about the condition or title to the estate, in which Gustavus told witness "*that the property was undivided, and that Jacob was worth as much as he was, and that Jacob had an interest in the farm which he, Gustavus lived on.*"

Gustavus had testified that " he was present at the public sale made by Alexander Neill, sheriff in 1827, of Jacob Kershner's interest in the lands, and that the same were knocked down to Andrew Kershner as purchaser."

The declarations of Gustavus, made to the witnesses King and Spickler, were offered to rebut the testimony of the defendants, tending to prove the seizure and sale by the sheriff of Jacob Kershner's interest in the land. For this purpose we think they were admissible. It is true that being made before he had acquired any interest or title in the estate of Jacob, they could not impair or affect the title acquired by Andrew under the sheriff's sale and would be inadmissible against Andrew if he were a party defendant; but Gustavus is himself a party to the cause, claiming under a title acquired from Andrew, under and by virtue of the alleged seizure and sale by the sheriff. Now the declarations made by him with respect to that title, are admissible against him for the purpose of showing that in fact there had been no valid and effectual seizure and sale by the sheriff, or of explaining the real character and effect of the sale itself.

The declarations are not those of a stranger to the estate; offered for the purpose of affecting the title of a third person; but of the party defendant himself, with respect to the very

title which he is now claiming under, and setting up to defeat the action. They are therefore clearly admissible.

There was no error in rejecting the testimony offered by the appellants in their *sixth* bill of exceptions. The farm called the " *Geyer Farm,*" formed no part of the lands in controversy; therefore, evidence of the title or ownership thereof being exclusively in Gustavus, was irrelevant and properly excluded. The testimony which had been given by Mrs. Kershner, to the effect that Gustavus had declared " *that he would sell the 'Geyer Farm,' that the debts would be paid and then there would be an equal divide,*" had been contradicted by Gustavus in his testimony, who denied that he had made any such statement. To sustain this denial it was proposed by the defendants to offer evidence shewing that the *Geyer Farm* belonged to Gustavus. This evidence was wholly irrelevant. For that might well be and yet Gustavus may have preferred to sell it rather than to sell the other property in which he held a joint interest for the purpose of raising money.

If Mrs. Kershner has testified that Gustavus had admitted that Jacob was interested jointly with him in the Geyer Farm, the evidence shewing the true state of the title would have been admissible, but such was not the character of Mrs. Kershner's testimony, and the question of the title to the Geyer Farm was therefore not involved.

The testimony offered by the appellants in their *seventh* exception, of conversations of the witness Gustavus with Mrs. Susan Kershner, which was offered for the purpose of contradicting Mrs. Kershner's evidence, was too general and indefinite to be admissible. Certain conversations of Gustavus, the defendant, had been proved by Mrs. Kershner; to rebut this testimony it was not competent to ask the witness Gustavus to state all the conversations he had had with Mrs. Kershner; under the rules of evidence, the rebutting testimony should be confined to the facts offered in evidence by the plaintiffs: by interrogating the witness only as to the par-

ticular conversations deposed to by the witness on the other side; otherwise the door would have been opened for the admission of irrelevant and illegal testimony.

By the appellants' *eighth* bill of exceptions, they excepted to the refusal of the Circuit Court to grant their *first, third, fifth* and *sixth* prayers, and to the granting of the *fourth* prayer of the appellee.

In the argument in this Court, it was conceded that the appellants' first prayer was erroneous and was properly refused.

The defence rested upon an outstanding title in *Andrew Kershner,* derived under an alleged seizure and sale by the sheriff in 1827, of Jacob Kershner's interest in the land; to prove a valid seizure and sale by the sheriff, the defendants offered presumptive evidence; and in granting their *second* prayer the Circuit Court instructed the jury that the several facts and circumstances therein enumerated, if believed by them, were evidence upon which they might ground the presumption of a valid seizure and sale, and if they so believed and presumed, then that the title of Jacob was thereby divested, and the plaintiff could not recover; and their verdict must be for the defendants.

And in granting the appellants' *fourth* prayer, the jury were instructed that if they believed the facts enumerated in the appellants' second prayer, or in their second and third prayers, then Jacob Kershner and his son, the plaintiff, claiming under him, were estopped and precluded from questioning the sale by the sheriff to Andrew, and the plaintiff would not be entitled to recover in this action.

These instructions covered the defendants' case, and gave them the full benefit of their legal defence. This being so, it is the well settled law of this Court that the judgment will not be reversed, even though some of the other prayers of the appellants, which were rejected, may have been correct in themselves. *Mutual Safety Ins. Co. vs. Cohen,* 3 *Gill,* 459; *New York Life Ins. Co. vs. Flack,* 3 *Md.,* 341; *Pettigrew vs.*

*Barnum, et al.,* 11 *Md.,* 434; *Balto. and Ohio R. R. Co. vs. Resley,* 14 *Md.,* 424; *Keech vs. Balt. and Wash. R. R. Co.,* 17 *Md.,* 32; *Davis vs. Furlow's Lessee,* 27 *Md.,* 546; *Phila., Wil. and Balt. R. R. Co. vs. Weaver,* 34 *Md.,* 434.

This is a sufficient answer to the exception of the appellants to the rejection of their fifth prayer, which was substantially granted by the Court below in the instructions given.

The *sixth* prayer of the appellants was erroneous in stating that the presumption of a valid seizure and sale arising from the facts set out in their second prayer, or in their second and third prayers, was a presumption of law, conclusive upon the appellee, and irrebuttable. To have granted that prayer would have been inconsistent with the theory of their second and fourth prayers, which had been granted. Besides, it was very clear that the presumption arising from the facts on which the appellants relied, was one of fact to be found by the jury, and not one of law conclusive and irrebuttable; and for this reason the sixth prayer of the appellants was properly refused, and there was no error in granting the *fourth* prayer of the appellee, which submitted to the jury the facts and circumstances on which the appellee relied to rebut the presumption of a valid seizure and sale by the sheriff of the lands in controversy; and instructed them that if believed by them, there was evidence from which they might find against the presumption.

We have discovered no error warranting a reversal upon any of the exceptions taken by the appellants.

Objection has been made to the verdict rendered by the jury, which is alleged to be insufficient, because too general and indefinite; and for this reason the appellants moved in arrest of judgment.

The plaintiff declared for a term of fifteen years in the undivided moiety of certain lands named and particularly described in the declaration. Issue was joined on the plea of not guilty. The whole question to be tried was the plaintiff's title to the lands described in the *narr.;* no dispute arose

as to location. The jury found a verdict "for the plaintiff, and assessed the damage at one cent."

The plain meaning and import of the verdict is that the defendants are guilty of the trespass and ejectment complained of in the declaration, and that the jury assess the damage of the plaintiff by reason thereof to be one cent. Such a verdict, if set out in terms, would be sufficient, and judgment would be entered thereon, that the plaintiff recover his term, &c., in the undivided moiety of the tracts of land, &c., (as in the *narr.*) 2 *Har. Ent.,* 206.

"If the plaintiff has laid his pretensions only in one way, the general verdict would be sufficient." *Dorsey on Ejectment,* 73.

Considering the verdict sufficient, we think the motion in arrest was properly overruled.

*Judgment affirmed.*

(Decided 20th June, 1872.)