THOMAS J. McDONALD

*vs.*

MAYOR AND CITY COUNCIL OF BALTIMORE.

*Leases: on condition; forfeiture; right of re-entry.    Streets: sale of property; by plat; grantor need not improve.*

A lease by Baltimore City to the appellant, besides the provisions for the payment of rent, contained the conditions that, if the development for the property for manufacturing purposes should not have been begun within one year from its date, or should not have been in actual use for such purpose before the expiration of three years from its date, the city should have the right to re-enter; *held,* that such conditions are in the alternative, and a compliance with the first does not relieve the lessee from the performance of the second.    p. 305

And a waiver of the first condition is not a waiver of the second; nor does the mere refusal of the lessor to receive the rent entitle the lessee to a verdict in an action of ejectment by the city.    p. 305

Owners of land who sell it in lots according to plans on which streets are laid out are not thereby bound to improve the streets and put them in good condition for use.    p. 307

A verdict in an action of ejectment should be a "verdict for the plaintiff for the land claimed in a declaration and ....  damages," or words to that effect; and the judgment should follow the verdict.    p. 308

*Query:* Whether a "judgment on a verdict in favor of the plaintiff for 1 cent and costs" is sufficient?    p. 308

*Decided November 21st, 1918.*

Appeal from the Circuit Court for Carroll County (Moss, J.), to which County the case had been removed from the Circuit Court for Anne Arundel County.

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Joseph C. France* and *F. Neal Parke* (with whom were *Bond & Parke, James B. Guyton* and *T. Tilden Kelbaugh*), for the appellant.

*S. S. Field, City Solicitor,* and *Edward J. Colgan, Assistant City Solicitor,* for the appellee.

BOYD, C. J., delivered the opinion of the Court.

The Mayor and City Council of Baltimore brought an action of ejectment against the appellant for a lot of ground in Anne Arundel County containing three and one-tenth acres, more or less. It was formerly a part of what is known as the "Old Marine Hospital Grounds," and was used by the city for hospital purposes and the detention of those suffering with infectious diseases. The lot is described on the "Plan for the Development of the Old Marine Hospital Grounds as Proposed by Jos. W. Shirley, Chief Engineer Topographical Survey," as Lot No. 4, which fronts on the Patapsco River and Thrift street. A plea of not guilty was filed, and the case was tried before the Court sitting as a jury. The trial resulted in a verdict for the plaintiff, and this appeal was taken from the judgment entered thereon. The only exception in the record is to the granting of the plaintiff's first and to the rejection of the defendant's first prayer.

The Mayor and City Council of Baltimore leased to The Impervious Products Company on the first day of April,

1912, for the term of ninety-nine years the property mentioned in the declaration at an annual rent of ninety-three dollars, payable in equal half-yearly installments, accounting from the first of April, 1912. Amongst other provisions to which the lease was subject was the following:

> "1. If the development, for manufacturing purposes, of the property hereinbefore described, as intended to be sold or leased, shall not have been begun within one year from the date of the delivery of the deed of grant or lease thereof to the grantee or grantees or lessee or lessees; or the said property shall not be in actual use for such purposes before the expiration of three years from the aforesaid date, the Mayor and City Council of Baltimore may, at its option, re-enter upon the aforegoing property and the grant or lease and all interest of the grantee or grantees or lessee or lessees thereunder shall thereupon become null and void; and it shall be stipulated in the grant or lease that the Mayor and City Council of Baltimore shall have the privilege of re-entering upon the property for the reasons aforesaid."

The lease was assigned to the appellant on March 25, 1915. He was President of the Impervious Products Company, which paid the semi-annual installments of rent on November 4th, 1912 (being the October rent), on June 6th, 1913 (April rent), March 28, 1914 (October, 1913, rent), and December 3, 1914 (being the April rent). The theories of the respective parties may in part at least be seen from the granted prayers. The first prayer of the plaintiff was granted, and is as follows: "If the Court sitting as a jury shall find that the lease of April 1st, 1912, from the Mayor and City Council of Baltimore to the Impervious Products Company offered in evidence, and the deed from the Impervious Products Company to John J. Cosgrove, dated March 25, 1915, and the deed from John J. Cosgrove to the defendant of the same date, were duly executed and delivered, and that

the land mentioned in the declaration is the same land described in said lease; and if the Court sitting as a jury shall further find that no development for manufacturing purposes was begun on the land mentioned in the declaration within one year from the date of delivery of the said lease, and that no such development has been begun up to the present time, and that said property was not in actual use for manufacturing purposes before the expiration of three years from the date of delivery of said lease, and has never yet been used for such purposes, then the verdict of the Court, sitting as a jury, should be for the plaintiff for the land described in the declaration, and one cent damages."

The second prayer of the defendant, after submitting to the Court, sitting as a jury, to find the ownership by the plaintiff of the property described, the lease, the deeds of assignment by the lessee to one Cosgrove and by him to the appellant, proceeded as follows:

"And that the rent was paid by the lessee and unto the plaintiff in semi-annual installments up to and inclusive of the year ending April 1st, 1913, and that from and after April 1st, 1913, the lessee paid the rent for the six months ending on October 1st, 1913, unto the plaintiff on March 28th, 1914, and paid the rent for the six months ending on April 1st, 1914, unto the plaintiff on December 3, 1914, and that each of said last two payments of rent were paid unto the plaintiff more than one year after the delivery of the lease from the plaintiff to the said The Impervious Products Company; and that at the time of the payment of said installments of rents maturing on October 1st, 1913, and April 1st, 1914, the plaintiff knew that no development for manufacturing purposes of the tract or parcel of land mentioned in the lease to The Impervious Products Company had begun within one year from the date of the delivery of the lease hereinbefore mentioned, then the plaintiff is estopped from denying the title of defendant, and the verdict of the Court, sitting as a jury, must be for the defendant, provided that the Court, sitting as a jury, shall further find that the fail-

ure of the defendant to pay the rent falling due after April 1st, 1914, was due to the fact that the plaintiff declined to receive the same."

The appellant contends that those prayers are so conflicting as to be reversible error, but the conditions in the lease were in the alternative—if the development, for manufacturing purposes, shall not have been begun within one year from the date of the delivery of the lease, *or* shall not be in actual use for such purposes before the expiration of three years from that date. A compliance with the first did not relieve the lessee from a performance of the second, in order to prevent the right of re-entry. Therefore, a waiver of the breach of the first could not relieve the lessee of the second. We do not find in the record any evidence of a waiver of the second or of its performance. The plaintiff's prayer required the Court, sitting as a jury, to find that no development for manufacturing purposes was begun within the year, and that no such development had been begun up to the time of the trial of the case, *and* that the property was not in actual use for manufacturing purposes before the expiration of the three years and had never been used for such purposes. If those facts were found, then the plaintiff was entitled to re-enter. It was immaterial whether the first condition was waived, if the second was not performed, and hence the omission to refer in that prayer to the question of waiver of that condition could do the defendant no harm.

The defendant's second prayer, which was granted, certainly went as far as he could ask. The proviso at the end of the prayer has reference to an excuse for non-payment of the rent. The plaintiff was not relying on that, but on the failure of the defendant to comply with the condition of the lease. The only evidence on the subject of not paying rent subsequent to that for the two years which was paid is that of the appellant himself. He was asked: "What did you do with any rent accruing subsequently to the two years that has been paid on this?" and answered, "I offered it to Mr. Glasscock and he refused it." He was then asked: "Why

306    McDONALD vs. M. & C. C. OF BALTO.

Opinion of the Court.                    [133

did he refuse it?" and replied, "He said the city was going to eject me because I had not erected the plant." Mr. Glasscock was the cashier in the Comptroller's Office. The witness did not say when he offered the rent, but the inference would seem to be that it was after the three years had expired (April 1st, 1915), as that was the time within which the property was to be in use for manufacturing purposes. The company which assigned the lease to him by the deed of March 25, 1915, had only paid the rent up to April 1st, 1914. He was president of the company, and he does not say whether he offered to pay the rent as such or after the assignment to him of the lease. But however that may be, he was told, when he did offer the rent, why the city was going to eject him. The Court must have found against the defendant as to the proviso in the prayer, or that the plaintiff did not know that the development for manufacturing purposes had not begun within the year, as there was no question about the other facts stated in the prayer. Just why the plaintiff was estopped from denying the title of the defendant, if all the facts submitted were found, we do not understand, but that was a prayer offered by the defendant and granted by the Court, and hence the appellant can not complain of it. A prayer on the question of waiver as to the year would have been correct, but as we have already indicated we do not think that a waiver as to the year entitled the defendant to a verdict, but as it was not necessary to refer to the waiver in the plaintiff's prayer there was no error in granting it, and as the Court must have found against the defendant on the facts, as a verdict for the plaintiff was rendered, no harm was done—certainly not to the defendant, by granting his prayer. The two prayers are therefore not in such conflict as is meant by the authorities in speaking of contradictory prayers.

The appellant contends that by a proper construction of the lease the city undertook to make Thrift street a passable highway, and the undertaking of the city and that of the lessee to build a factory on the lot constituted mutual (if not

dependent) conditions, and hence as the city has not done its part, the appellant was not required to develop the lot for manufacturing purposes. But we do not so understand the lease. The general principle is thus stated in 1 *Elliott on Roads and Streets* (3rd Ed.), Sec. 129: "An owner who dedicates a way to the public neither warrants nor represents that the land is fit for the purpose, but the public takes it as it is granted, and in the condition in which it is at the time of the dedication. If there are excavations or obstructions in the land dedicated the owner is not chargeable with the expense of filling or removing them, nor, after the dedication is fully complete by acceptance and the way has passed under the control of the public authorities, is he responsible for injuries resulting from the unsafe condition of the way, unless he has made it so by some wrongful act."

The fact that the plan showed that the streets were not to be regarded as dedicated can not make any difference in this respect. It would be an expensive undertaking on the part of landholders in many cases, if because they sold off lots on the plans on which streets were laid out they had to improve the streets and put them in good condition for use. We do not understand it to be contended that such is the general rule and we do not find anything in this lease or under the circumstances of the case which required the city to improve the streets. At the time of the lease a greater part of this street was covered with water and continued to be so.

There is no suggestion in the record that the appellant or his assignor was prevented from making the development for manufacturing purposes, or using the lot for such purposes, by any changes in the plan by the city, and we do not deem it necessary to discuss that. As we have seen, the only exception in the record is to the granting of the plaintiff's first prayer and to the rejection of the defendant's first prayer which sought to take the case from the jury. The latter was, in our judgment, properly refused, and the plaintiff's first prayer was properly granted.

We do not want to be understood as approving the form of the judgment entered in this case. A verdict in an ejectment case should regularly be: "Verdict for the plaintiff for the land claimed in the declaration and ———— damages," filling in the blank, of course, for the amount of damages, or something to that effect; 2 *Poe on Pl. & Pr.,* Sec. 480. The judgment should follow the verdict. In this case we find the following entry: "1918, February 23rd—Finding and verdict for plaintiff and damages assessed at one cent and costs. Judgment on verdict in favor of plaintiff for one cent damages and costs." In the docket entries the verdict and judgment are set out in substantially the same language.

In *Kershner* v. *Kershner's Lessee,* 36 Md. 309, 336, "a verdict for the plaintiff and assessed the damage at one cent" was held to be sufficient, but in this case the judgment is "Judgment on verdict in favor of plaintiff for one cent damages and costs." Whether or not that is a sufficient judgment suggests itself, but the judgment was not objected to below, and no point was made about it in this Court. We do not feel called upon, therefore, to determine whether it is a sufficient judgment, or what it includes, but will simply affirm the judgment. *Cushwa* v. *Cushwa,* 5 Md. 44, 54; *Standard Co.* v. *O'Brien,* 88 Md. 335, 340.

*Judgment affirmed, the appellant to pay the costs.*